UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREL LYNN SHORT, | ) | CIVIL ACTION NO. 4:22-CV-123 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff Laurel Lynn Short, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

The parties have consented to have a Magistrate Judge assigned to conduct all proceedings in this case. (Doc. 6). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.      BACKGROUND & PROCEDURAL HISTORY

On April 3, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 12; Doc. 8-2, p. 13). On August 30, 2019, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. *Id.* In these applications, Plaintiff alleged she became disabled on October 15, 2018, when she was forty-three years old, due to the following conditions: autoimmune (unspecified); inflammatory polyarthropathy; raised antibody titer; fibromyalgia; full thickness tear rotator cuff; osteoarthritis; chronic fatigue syndrome; carpal tunnel syndrome; joint pain; chronic pain syndrome; chronic obstructive pulmonary disease; internal derangement of left knee; need knee replacement on right knee; need spinal fusion lower back; spondylosis; sacroiliitis; intervertebral disc degeneration; bipolar disorder; OCD; ADHD; anxiety disorder; and major depression. (Admin. Tr. 279; Doc. 8-6, p. 5). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Admin. Tr. 295; Doc. 8-6, p. 22). Plaintiff alleges that these conditions also affect her memory. *Id.* Plaintiff has a high school education. (Admin. Tr. 280; Doc. 8-6, p. 6). Before the onset of her impairments, Plaintiff worked as a cashier supervisor and department manager. (Admin. Tr. 19; Doc. 8-2, p. 20).

Page 2 of 39

On January 13, 2020, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 12; Doc. 8-2, p. 13). On September 23, 2020, Plaintiff's applications were denied on reconsideration. *Id.* On September 23, 2020, Plaintiff requested an administrative hearing. *Id.*

The record suggests that Plaintiff returned to work in February 2021. (Admin. Tr. 33; Doc. 8-2, p. 34).

On May 5, 2021, Plaintiff, assisted by her counsel, appeared by telephone and testified during a hearing before Administrative Law Judge Scott M. Staller (the "ALJ"). *Id.* On July 1, 2021, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 21; Doc. 8-2, p. 22). On July 7, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 247; Doc. 8-4, p. 122).

On December 8, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 8-2, p. 2).

On January 23, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence. (Doc. 1, ¶ 34). As relief, Plaintiff requests that the court reverse the final administrative decision and enter an order awarding benefits. (Doc. 1, p. 8).

On April 1, 2022, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's applications is correct and is supported by substantial evidence. (Doc. 7, ¶ 11). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 16) and the Commissioner's Brief (Doc. 18) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the standards applicable to the specific claims Plaintiff raised in this case.

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

---

[1] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold

---

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Furthermore, meaningful review cannot be accomplished unless a decision is adequately explained. As the Court of Appeals has noted on this score:

---

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under

---

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[11] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[12] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

retirement age, and became disabled prior to the date on which he or she was last insured.[13]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers

---

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[14] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[15] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[18] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

### C. STANDARDS GOVERNING THE ALJ'S EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

The Commissioner's regulations carefully define the sources and types of statements that can be considered "medical opinions."[20] The regulations also

---

[17] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

[18] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[20] 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 416.902(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 416.913(a)(2) (defining the types of statements that are medical opinions).

recognize another type of statement that does not meet the strict definition of medical opinion, but is nonetheless evaluated under the same framework. This type of statement is called a "prior administrative medical finding" and is, in layman's terms, a state agency consultant's medical opinion.[21]

The regulatory framework for evaluating the persuasiveness of medical opinions and prior administrative medical findings includes both factors to guide the analysis, and very specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors:

(1) the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2) the extent to which the medical source's opinion is consistent with the record as a whole (consistency);

(3) length of the treatment relationship between the claimant and the medical source;

---

[21] 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding); 20 C.F.R. § 416.913(a)(5) (defining prior administrative medical finding).

(4)   the frequency of examination;

(5)   the purpose of the treatment relationship;

(6)   the extent of the treatment relationship;

(7)   the examining relationship;

(8)   the specialization of the medical source; and

(9)   any other factors that tend to support or contradict the opinion.[22]

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[23] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions and prior administrative medical findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[24]

The Commissioner's regulations also provide several "articulation" requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding.[25] Second, the ALJ is only required to articulate how he or

---

[22] 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

[23] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[24] 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

[25] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

she considered the other factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[26] Third, if one medical source submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[27] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered based on the 20 C.F.R. §§ 404.1520c and 416.920c factors.[28] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[29]

### D.   GUIDELINES FOR THE ALJ'S EVALUATION OF MEDICAL DETERMINABILITY AT STEP TWO

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test.[30]

---

[26] 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3).

[27] 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

[28] 20 C.F.R. § 404.1520c(d); 20 C.F.R. § 416.920c(d).

[29] 20 C.F.R. § 404.1520b(c); 20 C.F.R. § 416.920b(c).

[30] 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii).

To be considered medically determinable, an impairment must be established by objective medical evidence from an acceptable medical source.[31] A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough to establish the existence of an impairment.[32] A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present.[33]

Symptoms or limitations that a claimant alleges are caused by a non-medically determinable impairment are excluded from an ALJ's RFC assessment.

### E.   EVALUATING CHALLENGES TO AN ALJ'S RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the most a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[34] In making this assessment,

---

[31] 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921.

[32] 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921; 20 C.F.R. § 404.1502; 20 C.F.R. § 416.902.

[33] 20 C.F.R. § 404.1529(b); 20 C.F.R. § 416.929(b).

[34] 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945.

the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe.[35] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[36]

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[37] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case

---

[35] 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945.

[36] SSR 96-8p, 1996 WL 374184 at *7.

[37] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

record.[38] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[39]

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

## IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)     "Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including fibromyalgia, inflammatory arthritis, obstructive sleep apnea, obesity, bipolar disorder and anxiety disorder" (Doc. 16, p. 1);

(2)     "Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or even mentioned in his decision, including Plaintiff's diagnosed and treated headaches, right ankle pain, fatigue, memory loss, undifferentiated connective tissue disease, incontinence with distended bladder, chronic obstructive pulmonary disease, depression, restless leg syndrome, spinal disc bulges, neuropathy, and osteoarthritis" (Doc. 16, pp. 1-2); and

(3)     "Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions and limitations

---

[38] *Id.*

[39] *Id.*

from Plaintiff's treating sources, including her rheumatologist, Dr. Kantor, and her psychiatrist, Dr. Kuhlengel, as compared to the opinions from the State Agency Consultants" (Doc. 16, p. 2).

We construe Plaintiff's brief as raising the following arguments:

(1)   The ALJ did not properly evaluate medical opinions by Dr. Kantor and Dr. Kuhlengel;

(2)   The ALJ did not identify and evaluate twelve of Plaintiff's medically determinable impairments at step two;

(3)   Substantial evidence does not support the ALJ's RFC assessment because seven credibly established limitations were excluded; and

(4)   The ALJ's RFC assessment does not match the hypothetical question posed to the VE.

We will begin our analysis by summarizing the ALJ's findings, then will address each argument.

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his July 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2022. (Admin. Tr. 14; Doc. 8-2, p. 15). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 15, 2018, (Plaintiff's alleged onset date) and July 1, 2021, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 14; Doc. 8-2, p. 15).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: fibromyalgia, inflammatory arthritis, obstructive sleep apnea, obesity, bipolar disorder, and an anxiety disorder. (Admin. Tr. 15; Doc. 8-2, p. 16). The ALJ also identified the following medically determinable non-severe impairments: hypertension, asthma, and status post right shoulder rotator cuff tear. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 15; Doc. 8-2, p. 16).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except she is limited to:

> frequent climbing of ladders, ropes, and scaffolds. She is limited to frequent kneeling, crouching or crawling. The claimant is limited to simple, routine, repetitive tasks involving one to two step tasks requiring little to no demonstration that can be learned within 30 days or less from the beginning of the job. She is able to make judgements on simple, work-related decisions. the claimant can occasionally interact with the public, coworkers, and supervisors in a routine work setting.

(Admin. Tr. 16; Doc. 8-2, p. 17).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 19; Doc. 8-2, p. 20).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 20; Doc. 8-2, p. 21). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cleaner/housekeeper, DOT #323.687-014; marker, DOT #209.587-034; and office helper, DOT #239.567-010. *Id*.

## B.   THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE

In her brief Plaintiff argues that the ALJ did not properly evaluate medical opinions by Dr. Kantor and Dr. Kuhlengel. We will address Plaintiff's arguments as they relate to each source separately below.

### 1.   The ALJ Properly Evaluated Dr. Kantor's Opinion

In his opinion, Dr. Kantor assessed that Plaintiff: could occasionally lift and carry less than ten pounds; could stand/walk less than two hours per eight-hour workday; could sit about four hours per eight-hour workday; could never twist, stoop, crouch, climb ladders, or climb stairs; could use her hands and arms to handle, finger, feel and reach less than 10% of each workday; would be absent more than four days per month; would need to elevate her legs 75% of the workday; would

need hourly unscheduled 5-minute breaks; and would have pain that would constantly interfere with the attention and concentration needed to perform simple tasks. (Admin. Tr. 1521-1526; Doc. 8-9, pp. 87-92).

In his decision, the ALJ found that Dr. Kantor's opinion was not persuasive. In doing so, the ALJ explained:

> The claimant had periodic appointments with Dr. Kantor, a rheumatologist, during this time. She reported joint pain and fatigue, but noted that Lyrica was helpful in reducing her pain but made her feel sleepy. The claimant had multiple positive tender points associated with fibromyalgia, but Dr. Kantor noted that her inflammatory polyarthritis was improved with the medication Plaquenil (Exhibit (F/12-13). An EMG of the legs in March 2019 was normal (Exhibit 9F/20-24). The claimant last saw Dr. Kantor in the summer of 2019, where he noted that the claimant continued to have positive tender points but no signs of synovitis in her joints. He continued to prescribe Lyrica and Plaquenil (Exhibit 9F/53).

> Dr. Kantor completed a medical source statement in December 2020 which indicated very reduced ability to stand, walk, lift, and carry, no ability to stoop, twist, crouch, or climb, and a need to elevate her legs above waist level at least 75% of the day. He also noted that the claimant had poor attention/concentration, could not handle even low stress work, and would likely miss more than 4 days of work each month due to her impairments (Exhibit 23F). While Dr. Kantor treated the claimant in the past, this opinion is not persuasive because it is not well supported by her physical exams and the claimant's own testimony that she is able to drive, live alone, and work as a companion to an elderly community member. The claimant's medical records contain no evidence that she needs to elevate her legs for most of day, and her physical examinations, while positive for fibromyalgia tender points, do not document problems with gait, sensation, or strength.

(Admin. Tr. 18; Doc. 8-2, p. 19).

In her brief, Plaintiff argues that the ALJ "did not analyze these opinions using the factors under 20 C.F.R. § 1520(c) and offer little, to no analysis of these opinions." (Doc. 16, p. 28). She also provided a summary of Dr. Kantor's opinion and argued that:

> All of these issues are supported by Claimant's medical records and her testimony. It should also be noted that no Medical Consultative Exam was performed that contradicts Dr. Kantor's opinions regarding Claimant's exertional limitations, and as such, there is no medical opinion from any medical source that personally physically examined Claimant that contradicts Dr. Kantor's opinions.

(Doc. 16, pp. 28-29).

Turning to Plaintiff's first argument, that the ALJ did not "analyze" the opinion under the applicable factors. We are not persuaded. The ALJ discussed the supportability and consistency of the opinion, and discussed the medical evidence relevant to Plaintiff's physical impairments (fibromyalgia, inflammatory arthritis, obstructive sleep apnea, obesity, hypertension, asthma, and status-post right shoulder rotator cuff tear). (Admin. Tr. 15, Doc. 8-2, p. 16) (discussing hypertension, asthma, and status-post right shoulder rotator cuff tear); (Admin. Tr. 17-18; Doc. 8-2, pp. 18-19) (discussing evidence related to the fibromyalgia, inflammatory arthritis, sleep apnea, and obesity). Although that discussion is not as thorough as we would have liked given the breadth of the record in this case, Plaintiff has not alleged that it is inaccurate or unsupported.

In her second argument, Plaintiff provides a list of 12 aspects of Dr. Kantor's opinion, and contends that "all of these issues are supported by Claimant's medical records and her testimony." (Doc. 16, p. 28). She does not, however, cite to any of those records or that testimony. As such, we also find this argument is unpersuasive.

Third, Plaintiff suggests that remand is required because no consultative examiner issued an opinion about her physical limitations. She is correct that no *consultative examiner* issued an opinion. However, two state agency consultants reviewed her records and concluded that Plaintiff's physical ability was consistent with a limited range of light work. (Admin. Tr. 72-74; Doc. 8-3, pp. 9-11); (Admin. Tr. 102-104; Doc. 8-3, pp. 39-41). The ALJ found that these prior administrative medical findings were "persuasive." (Admin. Tr. 19; Doc. 8-2, p. 20). Furthermore, the record in this case contains over 1,500 pages of medical records. Thus, to the extent Plaintiff suggests that there was insufficient evidence in the record to allow the ALJ to evaluate Plaintiff's physical limitations, we disagree.

## 2.    The ALJ Properly Evaluated Dr. Kuhlengel's Opinion

In December 2020, Dr. Kuhlengel completed a mental RFC assessment check-box type questionnaire. In that questionnaire Dr. Kuhlengel identified Plaintiff's current diagnoses as Bipolar Affective Disorder, ADHD. (Admin. Tr. 1444-1448; Doc. 8-9, pp. 10-14). She was then asked to describe Plaintiff's ability to function in certain categories based on the following scale: none (no limitations);

mild (slightly limited ability, would be off task 5% of the workday); moderate (fair ability, would be off task 10% of the workday); marked (seriously limited, would be off task 15% of the workday); and extreme (unable to function, would be off task 25% or more of the workday).

Dr. Kuhlengel assessed that Plaintiff had "mild" or "no" limitations in the following categories: follow one-or-two step oral instructions to carry out a task; understand and learn work-like terms, instructions, and procedures; describe work activity to someone else; ask and answer questions and provide explanations; reason and use judgment to make work-related decisions; cooperate with others; ask for help when needed; handle conflicts with others; state her own point of view; initiate or sustain a conversation; understand and respond to social cues; perform a task that Plaintiff understands how to do; work at an appropriate and consistent pace; complete tasks in a timely manner; and maintain personal hygiene and attire appropriate for work settings.

Dr. Kuhlengel assessed that Plaintiff would have "moderate" limitations in the following categories: recognize a mistake and correct it; identify and solve problems; sequence/complete multi-step activities; respond appropriately to requests, suggestions, criticisms, correction, and challenges; keep social interactions free from excessive irritability, sensitivity, argumentativeness, or suspiciousness; interact appropriately with the general public; maintain socially appropriate behavior

and adhere to basic standards of neatness and cleanliness; ignore distractions while working; change activities or work settings without being disruptive; work close to or with others without interrupting or distracting them; sustain ordinary routine and regular attendance at work; respond to demands; adapt to changes; manage psychologically based symptoms; distinguish between acceptable and unacceptable work performance; set realistic goals; make plans for herself independently of others; and be aware of normal hazards and take precautions.

Dr. Kuhlengel assessed that Plaintiff had one marked limitation due to pain in the category of working a full day without needing more than the allotted number or length of rest breaks. Dr. Kuhlengel did not, however, specify how many breaks or how long those breaks would last. When asked how often Plaintiff would need to miss work each month because of her impairments, Dr. Kuhlengel wrote "I have not known her during a time she was working or attempting to work, so any answer is speculation." *Id.* When asked whether Plaintiff could work on a regular and continuing basis, Dr. Kuhlengel wrote "no" and explained "her mental condition has responded well to recent medication changes, but in a higher stress environment she is likely to have difficulty maintaining stability." *Id.* Dr. Kuhlengel also assessed that Plaintiff's impairment would interfere with her ability to work on a regular and sustained basis at least 20% of the time.

In her opinion, Dr. Kuhlengel noted that she began treating Plaintiff in August of 2020, and saw her monthly. (Admin. Tr. 1444; Doc. 8-9, p. 10). The opinion was issued in December 2020, four months later.

In his decision, the ALJ found that Dr. Kuhlengel's opinion was not persuasive. In doing so, the ALJ explained:

> The claimant began treating with Dr. Kuhlengel, a new psychiatrist, in August 2020, after her insurance provider changed. She reported some problems with mood swings at her initial appointment, and Dr. Kuhlengel thought that the claimant should stop taking Cymbalta as it may cause mood swings when combined with other medications she was taking (Exhibit 18F/18). Dr. Kuhlengel also prescribed Geodon with good results. After only two months of treatment, the claimant reported improved mood control and somewhat better sleep. The claimant is currently maintained on Geodon, Vyvanse, trazadone, and Klonopin with good results. She reported few mood swings and much better sleep with her current medications (Exhibit 22F/28-32; 29F/8).
>
> In December 2020, Dr. Kuhlengel opined that the claimant had moderate limitations in correcting mistakes, solving problems, completing multi-step activities, responding to criticism, interacting with the public, avoiding distractions, working closely with others, maintaining a routine and attendance, adapting to changes, managing symptoms, setting goals, and making independent plans. He also assessed a marked need for breaks due to pain levels (Exhibit 21F). Overall, this opinion is not persuasive because it is not well supported by Dr. Kuhlengel's treatment notes that document steady improvement since the claimant began treating with him in August 2020. Dr. Kuhlengel adjusted the claimant's medications at the beginning of their treatment relationship, and by October 2020, the claimant reported better controlled moods, better sleep, and less irritability with her new medications[.]

(Admin. Tr. 19; Doc. 8-2, p. 20).

In her brief, Plaintiff argues that the ALJ "did not analyze these opinions using the factors under 20 C.F.R. § 1520(c) and offer little, to no analysis of these opinions." (Doc. 16, p. 28). Plaintiff provides a summary of Dr. Kuhlengel's opinion, then argues:

> Despite the length, quality and frequency of Dr. Kuhlengel's treatment, and thorough explanations in her Mental Residual Functional Capacity Assessment supporting her opinions, the ALJ once again assigned no weight to this treating source opinion.

(Doc. 16, pp. 29-30).

Turning to Plaintiff's argument, that the ALJ's analysis does not comport with the applicable regulations, we are not persuaded. The ALJ discussed the consistency and supportability of Dr. Kuhlengel's opinion. Although Plaintiff argues that this opinion should have been found more persuasive given the length, quality and frequency of the treatment relationship, we find that the decision suggests that the ALJ considered this factor. The ALJ noted in his decision that Dr. Kuhlengel is a treating psychiatrist, and that Plaintiff began seeing her in August 2020. (Admin. Tr. 19; Doc. 8-2, p. 20). Thus, it appears that the ALJ did consider the treatment relationship. Under the applicable regulations, he was not required to provide any further articulation related to the treatment relationship factors.

Plaintiff also suggests that Dr. Kuhlengel's opinion should have been found more persuasive because the doctor's opinion is well-explained. Most of Dr.

Kuhlengel's responses however were just to circle the corresponding rating. Furthermore, nothing in the ALJ's decision suggests that this opinion was found less persuasive due to a lack of explanation. Rather, the ALJ found it less persuasive due to the lack of support in Dr. Kuhlengel's treatment records. Therefore, we find that the ALJ properly applied the regulations.

### C.   PLAINTIFF HAS NOT SHOWN THAT THE ALJ FAILED TO IDENTIFY AND EVALUATE ALL OF HER MEDICALLY DETERMINABLE IMPAIRMENTS

Plaintiff argues that the ALJ did not consider Plaintiff's headaches, right ankle pain, fatigue, memory loss, undifferentiated connective tissue disease, incontinence with distended bladder, chronic obstructive pulmonary disease, restless leg syndrome, spinal disc bulges, neuropathy or osteoarthritis in his decision. (Doc. 16, p. 23). Plaintiff is correct that these conditions were not identified or evaluated at step two of the sequential evaluation process.

The Commissioner responds that "much of Short's litany of 'non-severe impairments' are not conditions separate and apart from the diagnoses already discussed, but, instead, are symptoms related to them." (Doc. 18, p. 17).

As an initial matter, when Plaintiff filed her application, she did not allege headaches, right ankle pain, fatigue, memory loss, connective tissue disease, incontinence, restless leg syndrome, spinal disc bulges, neuropathy, or osteoarthritis contributed to her disability. She did, however, allege impairment due to chronic

obstructive pulmonary disease. Although Plaintiff alleges that all of these specific

disorders are contained in Plaintiff's medical records, she does not direct the court

to any page within 1,959-page administrative record (which includes over 1,500

pages of medical records) where any of the 12 diagnoses at issue are mentioned. *See*

L.R. 83.40.4(b) (requiring that each contention in a plaintiff's brief must be

supported by a *specific* reference to the portion of the record relied upon).

The Third Circuit has stated:

It has been oft-noted that "Judges are not like pigs, hunting for truffles
buried in the record." And this Court has frequently instructed parties
that they bear the responsibility to comb the record and point the Court
to the facts that support their arguments.[40]

Plaintiff's step-two argument is three pages long, with more than one page

devoted to the heading and boilerplate language. The remainder includes no

reference to Plaintiff's medical records. Thus, to the extent Plaintiff argues that the

ALJ failed to identify and evaluate nearly a dozen impairments at step two without

citing to any portion of the administrative record that supports their existence, we

are not persuaded that remand is required. Plaintiff has not adequately supported this

---

[40] *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) (citations omitted);
*Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821085 (D.N.J. Nov. 16,
2016) (finding that, in a case where a claimant filed a two-age appellate brief, it is
not the Court's role to comb the record hunting for evidence that the ALJ
overlooked).

argument, and absent some basis that undermines the ALJ's conclusion in this regard we will not disturb his decision.

### D.  SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT

Plaintiff argues that the ALJ did not account for the full measure of Plaintiff's symptoms in the RFC assessment. Plaintiff is correct that an ALJ must address all of a claimant's *credibly established limitations* in the RFC assessment, and that the ALJ in this case did not credit the full measure of Plaintiff's statements about her pain, fatigue, and lack of focus. (Admin. Tr. 17; Doc. 8-2, p. 18) (finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."). He did, however, conclude that Plaintiff was capable of engaging in "simple, routine, repetitive tasks involving one to two step tasks requiring little to no demonstration that can be learned within 30 days or less from the beginning of the job." (Admin. Tr. 16; Doc. 8-2, p. 17). The ALJ did not include any limitation related to Plaintiff's ability to maintain attendance or incorporate unscheduled breaks or time off task. Thus, the ALJ implicitly found that these limitations were not present.

Plaintiff argues that substantial evidence does not support the ALJ's determination because: (1) the ALJ did not explain why he did not consider

statements suggestive of more serious symptoms in Plaintiff's medical records; (2) did not adopt Dr. Kantor's opinion; and (3) did not adopt Dr. Kuhlengel's opinion.

As discussed separately, the ALJ properly evaluated and explained his analysis of the Kantor and Kuhlengel opinions. Turning to Plaintiff's remaining argument, Plaintiff argues that the ALJ failed to include proper limitations regarding:

> (1) being off task more than 15% of the workday; (2) being limited to only four hours of sitting and a combined two hours of walking and standing in an eight hour workday, (3) the need to elevate her legs at waist level for ½ of the workday, (4) the need for unscheduled breaks (even if only five minutes per hour), (5) her limitation in the use of her hands and arms for all purposes, (6) the interference her pain and mental-health issues would have with regards to her ability to follow even simple instructions in an unskilled job, and (7) that she would exceed the normally acceptable rate of absenteeism (based upon a reasonable limitations that she would miss one full day of work and part of another day of work), all of which would get worse as the day would go on due to Claimant's pain and mental-health related issues, and all of which the Vocational Expert opined would render the Claimant unemployable.

(Doc. 16, pp. 20-21). Plaintiff then provides: a list of 19 "issues" related to her impairments, (Doc. 16, pp. 15-16); a list of nine "diagnostic studies and treatment notes" to "confirm continued limitations," (Doc. 16, pp. 17-18); and a list of 24 "issues" "confirmed by Claimant's testimony," (Doc. 16, pp. 18-20).

Plaintiff relies on the following medical records to support her argument:

- June 11, 2016 MRI of Plaintiff's right knee noting some abnormalities. (Admin. Tr. 923; Doc. 8-8, p. 26).

- December 3, 2016 discharge summary after a one-day hospital admission where Plaintiff underwent surgery to address stress urinary incontinence. (Admin. Tr. 903; Doc. 8-8, p. 6).

- October 25, 2017 mental health treatment record documenting that Plaintiff reported some anxiety, but she exhibited normal behavior, an appropriate affect, sufficient attention, adequate concentration, intact judgment and adequate insight. (Admin. Tr. 412-414; Doc. 8-7, pp. 66-68).

- January 5, 2018 mental health treatment record documenting that Plaintiff had a depressed and anxious mood, but exhibited sufficient attention, adequate concentration, intact judgment and adequate insight. (Admin. Tr. 417-418; Doc. 8-7, pp. 71-72).

- June 20, 2018 mental health treatment record documenting that Plaintiff reported her moods were not stable. (Admin. Tr. 431; Doc. 8-7, p. 550). Pages two and three of that treatment note, containing the clinician's objective observations, are not included in the record.

- July 5, 2018 mental health treatment record where Plaintiff reported that she is dropping things and sleeps most of the day. (Admin Tr. 433; Doc. 8-7, p. 87). Pages two and three of that treatment note, containing the clinician's objective observations, are not included in the record.

- September 10, 2018 pain management treatment record noting low back pain with a severity level of 8. (Admin. Tr. 689; Doc. 8-7, p. 343). Plaintiff's lumbar spine was tender on inspection. (Admin. Tr. 692; Doc. 8-7, p. 346).

- September 11, 2018 mental health treatment record noting mood swings, but also observing that Plaintiff had an appropriate affect, good memory, adequate concentration, intact judgment, and intact insight. (Admin. Tr. 436; Doc. 8-7, p. 90).

- October 9, 2018 pain management treatment record noting that Plaintiff complained of low back pain with a severity level of 1. (Admin. Tr. 680; Doc. 8-7, p. 334). On examination, Plaintiff had mild pain with motion. (Admin. Tr. 683; Doc. 8-7, p. 337).

- January 9, 2019 pain management treatment record noting that Plaintiff complained of moderate-severe back pain. (Admin. Tr. 665; Doc. 8-7, p. 319).

Plaintiff exhibited moderate pain in her lumbar spine with motion. (Admin. Tr. 669; Doc. 8-7, p. 323).

- February 1, 2019 examination with internal medicine where Plaintiff reported ongoing pain that had improved from 10/10 on bad days to 4/10. (Admin. Tr. 748; Doc. 8-7, p. 402). On examination Plaintiff had multiple tender points, bilateral shoulder tenderness, and bilateral knee tenderness. (Admin. Tr. 749; Doc. 8-7, p. 403).

- February 14, 2019 examination with internal medicine where she reported that she was 75-80% better with Lyrica, but that she began to have increasing pain and soreness in her legs. (Admin. Tr. 751-752; Doc. 8-7, p. 405-406). Plaintiff had muscle weakness in the lower extremities, and 5/5 strength. Plaintiff could do a leg squat but needed assistance for balance on rising. *Id.*

- March 19, 2019 EMG done to rule out lower extremity neuropathy. (Admin. Tr. 1757; Doc. 8-9, p. 323). The EMG was normal, and an examination revealed that Plaintiff's lumbar spine movements were mildly decreased in all directions, her lower extremities had a full range of motion, her gait was normal, her straight leg raise was negative bilaterally, her ankle jerk reflex was 1+ and her knee jerks are 2+.

- May 9, 2019 internal medicine treatment record where Plaintiff complained of daytime fatigue and requested a sleep study. (Admin. Tr. 784; Doc. 8-7, p. 438).

- June 12, 2019 internal medicine treatment record for follow-up on her arthritis. (Admin. Tr. 788; Doc. 8-7, p. 442). Plaintiff reported fatigue. On examination Plaintiff had right shoulder pain, some mild left shoulder tenderness, and multiple tender points. (Admin. Tr. 789; Doc. 8-7, p. 443).

- June 17, 2019 mental health treatment record noting that Plaintiff exhibited normal behavior, euthymic mood, appropriate affect, adequate concentration, intact judgment, and intact insight. (Admin. Tr. 460-462; Doc. 8-7, pp. 114-116).

- June 19, 2019 report following a whole body bone scan. (Admin. Tr. 996-997; Doc. 8-8, pp. 99-100). The scan showed mild osteoarthritis of the lumbar spine, and asymmetric uptake with the right ankle and distal tibia.

- June 20, 2019 MRI of Plaintiff's right shoulder noting abnormalities. (Admin. Tr. 882; Doc. 8-7, p. 536).

- June 24, 2019 orthopedic treatment record where Plaintiff reported persistent shoulder problems. (Admin. Tr. 879; Doc. 8-7, p. 533). Plaintiff was scheduled for surgical intervention.

- July 15, 2019 MRI of Plaintiff's right ankle noting some abnormalities. (Admin. Tr. 802-803; Doc. 8-7, pp. 156-57).

- July 17, 2019 hospital record noting Plaintiff was discharged after shoulder surgery. (Admin. Tr. 965; Doc. 8-8, p. 68). Plaintiff also notes that the "review of symptoms" section of this note suggests Plaintiff was positive for "agitation, behavioral problems, decreased concentration and dysphoric mood." (Admin. Tr. 1150; Doc. 8-8, p. 253). However, on physical examination Plaintiff was described as having "normal mood and affect," normal behavior, and normal judgment and thought content. (Admin. Tr. 1151; Doc. 8-8, p. 254).

- July 29, 2019 (12 days after shoulder surgery) physical therapy record noting that Plaintiff complained of a lot of pain when she moves her arm, and assessing that Plaintiff had a very "guarded and painful" right shoulder. (Admin. Tr. 537; Doc. 8-7, p. 191).

- August 2, 2019 mental health treatment record where Plaintiff reported poor sleep. (Admin. Tr. 464-465; Doc. 8-7, pp. 118-119). No objective findings or clinical observations were included in the record.

- August 16, 2019 (one month after shoulder surgery) physical therapy record documenting that Plaintiff reported a lot of right shoulder pain at rest and with movement, but assessing that Plaintiff's passive range of motion was improving in all measured ranges. (Admin. Tr. 529; Doc. 8-7, p. 183).

- September 4, 2019 internal medicine treatment record. Plaintiff reported left knee pain. (Admin. Tr. 810; Doc. 8-7, p. 465). On examination Plaintiff had mild warmth in the left knee, multiple tender points, and tenderness in the right ankle. (Admin. Tr. 811; Doc. 8-7, p. 466).

- September 4, 2019 (7 weeks after shoulder surgery) physical therapy record documenting that Plaintiff reported that she was stiff and sore. (Admin. Tr. 501; Doc. 8-7, p. 155).

- September 6, 2019 (7 weeks after shoulder surgery) physical therapy record documenting that Plaintiff complained her right shoulder was sore and stiff, and assessing that Plaintiff should continue physical therapy for her shoulder. (Admin. Tr. 493; Doc. 8-7, p. 147).

- September 15, 2019 neurology consultation at the emergency room where Plaintiff reported she had a headache with word find difficulties, dizziness, and motor dysfunction. (Admin. Tr. 568-600; Doc. 8-7, p. 222-254). Plaintiff was diagnosed with a migraine.

- September 17, 2019 emergency department record where Plaintiff complained of expressive aphasia and headache. (Admin. Tr. 945; Doc. 8-8, p. 48). Plaintiff had a moderate left upper extremity drift and moderate left facial droop. (Admin. Tr. 949; Doc. 8-8, p. 52). A CT scan was negative. Plaintiff had an MRI, but left the hospital against medical advice before the results were reviewed. (Admin. Tr. 952; Doc. 8-8, p. 55). The MRI showed an acute sinus inflammation and bilateral mastoid effusions. (Admin. Tr. 959; Doc. 8-8, p. 62).

- September 24, 2019 neurology treatment note. In that note, the doctor reported that Plaintiff had slurred speech that improves with distraction, that Plaintiff appeared sleepy during conversations, and that an MRI of Plaintiff's brain without contrast was normal. (Admin. Tr. 618; Doc. 8-7, p. 272). Plaintiff's memory registration  was 3/3 and her recall was 2/3. (Admin. Tr. 622; Doc. 8-7, p. 276).

- September 27, 2019 internal medicine treatment record for follow-up on a sinus infection and migraine. (Admin. Tr. 824-826; Doc. 8-7, p. 478-480). Plaintiff was using a cane and walking boot due to a fracture on her right foot. there was no tenderness in her spine, and Plaintiff's motor strength in her upper and lower extremities was grossly intact.

- October 3, 2019 mental health treatment record documenting that, although she had an "anxious and manic" mood, she exhibited normal behavior, an appropriate affect, adequate concentration, intact judgment and adequate

insight. (Admin. Tr. 352; Doc. 8-7, p. 6); (Admin. Tr. 470-471; Doc. 8-7, pp. 124-125).

- October 10, 2019 pain management treatment record documenting complaints of moderate-severe back pain. (Admin. Tr. 644; Doc. 8-7, p. 298). On examination she had tenderness in her spine, and mild pain with motion. (Admin. Tr. 649; Doc. 8-7, p. 303).

- October 17, 2019 orthopedic treatment record for her 12-week post-surgical follow-up. (Admin. Tr. 844; Doc. 8-7, p. 498). Plaintiff reported she had pain and a limited range of motion and weakness in her right arm. *Id.* Plaintiff was negative for back pain, gait problem, joint swelling, neck pain, and neck stiffness. (Admin. Tr. 845; Doc. 8-7, p. 499). She was positive for weakness. *Id.*

- February 18, 2020 mental health treatment record where Plaintiff reported that she was doing well, but had two episodes of anger recently. (Admin. Tr. 1316; Doc. 8-8, p. 420). The mental status examination was normal, and Plaintiff was calm and cooperative during the examination. (Admin. Tr. 1317; Doc. 8-8, p. 420).

- March 3, 2020 emergency department record. Plaintiff was directed to go to the hospital due to low sodium levels and elevated white blood cells in her lab work, which occurred after Plaintiff experienced two days of diarrhea (ten episodes per day). (Admin. Tr. 1358; Doc. 8-8, p. 461). Plaintiff refused a saline drip and agreed to follow-up with her primary care provider the next day. (Admin. Tr. 1366; Doc. 8-8, p. 469).

- March 5, 2020 treatment record where Plaintiff reported that she drank two or three gallons of diet iced tea per day (Plaintiff's daughter estimated that Plaintiff drank about 4 gallons per day). (Admin. Tr. 1404; Doc. 8-8, p. 507). Plaintiff was instructed to limit her intake to less than half a gallon per day.

- August 25, 2020 treatment record requesting follow-up and a medical excuse note for jury duty. (Admin. Tr. 1462-1463; Doc. 8-9, pp. 28-29). Plaintiff also reported that she was having trouble sleeping, and was prescribed medication to address that issue.

- September 15, 2020 mental health treatment record where Plaintiff reported stress at home, anxiety, depression, and crying spells. (Admin. Tr. 1480; Doc. 8-9, p. 46). Plaintiff's medications were discussed and were adjusted.

- October 20, 2020 mental health treatment record where Plaintiff reported that she was doing very well. Her medications were adjusted and she reported that she was starting therapy on November 2, 2020. (Admin. Tr. 1478; Doc. 8-9, p. 44).

- November 3, 2020 obstetric annual examination. (Admin. Tr. 1537; Doc. 8-9, p. 103). No abnormalities were noted during the examination, Plaintiff did report symptoms unrelated to that examination that are consistent with the allegations made in this case.

In response to these forty-six (46) separate references to the medical records the Commissioner argues:

> While Short argues that her mere diagnoses warrant "more significant limitations," *e.g.*, being off task, needing unscheduled breaks, absenteeism (Pl's Br. at 14, 16-17), the ALJ's finding that her conditions are not debilitating as alleged was supported by more than a mere scintilla of evidence. Indeed, mere diagnoses and speculatory restriction are never permitted to show disability. 20 C.F.R. § 404.1521.

(Doc. 18, p. 16).

On appeal we are not to evaluate the "score" of the "good" vs "bad" notations in the medical records. Instead, we are to determine if the ALJ relied upon (and explained that reliance) on "substantial" evidence.  Substantial evidence has been

defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41]

There is no dispute in this case that Plaintiff reported difficulty with concentration and pain due to her conditions. The ALJ acknowledged these statements as follows:

> The claimant testified that she has significant joint pain, fatigue, mood swings, and problems sleeping that interfere with her ability to work. She testified that she needs frequent breaks throughout the day due to her pain and sleepiness. She has some mood swings and difficulty maintaining attention for long periods. She changes positions frequently during the day. Her adult children frequently help her with household chores, grocery shopping, and heavy lifting she might have to do.

(Admin. Tr. 17; Doc. 8-2, p. 18). In the decision, the ALJ evaluated these "symptoms" pursuant to 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 as required, and concluded that Plaintiff's "symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." (Admin. Tr. 17; Doc. 8-2, p. 18). Plaintiff does not challenge that evaluation. She does, however, challenge its outcome. She argues, citing to portions of her own testimony and the medical records, that additional limitations are necessary.

---

[41] *Richardson v. Perales*, 402 U.S. 389, at 401 (1971) (*quoting Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

In his decision, the ALJ thoroughly summarized Plaintiff's medical records and the opinion evidence, and provided the following explanation as to why the full range of Plaintiff's statements were not credited:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because her testimony is not fully supported by her objective medical records. While the claimant testified about significant joint pain and fatigue, she has not reported this severity of symptoms to her treating physicians. The claimant treated with a pain management physician in the past and had good results with lumbar epidural steroid injections, lumbar radio-frequent ablation, and Tramadol to reduce her lower back pain (Exhibit 8F/17, 19- 23, 28, 30-34, 40, 63). After her first radio-frequency ablation, the claimant reported that her leg pain was completely relieved, and her gait was normal in February 2019. She did not return to the pain management physician until October 2019, when she reported that her back pain was returning (Exhibit 8F/9-14). The claimant had another radio-frequency ablation and has not sought any additional pain management treatment since that time (Exhibit 8F/7).
>
> . . . .
>
> The claimant has long received mental health treatment, but her treatment notes document good results with medication. The claimant's psychiatrist in 2018 and 2019 documented largely normal mental status exams with only an occasional depressed mood with the claimant prescribed Cymbalta and Adderall (Exhibit 3F). In January 2020, the claimant attended a consultative psychological exam, where she reported some problems with sleep, depression, anxiety, panic attacks, and memory. The claimant presented as cooperative with good eye contact. Her speech was normal and thoughts were logical. She displayed a full affect but anxious mood. On simple tests, she has mild problems with memory and attention, likely due to anxiety.

(Admin. Tr. 17, 18; Doc. 8-2, pp. 18, 19).

Page 37 of 39

Plaintiff appears to suggest that substantial evidence does not support the ALJ's evaluation of Plaintiff's statements, and by extension the RFC assessment because there is some conflicting evidence. It is well-established that the possibility of drawing two inconsistent conclusions from the evidence does not prevent the ALJ's decision from being supported by substantial evidence. Having reviewed the ALJ's decision, and the relevant portions of the record, we find that substantial evidence the ALJ's RFC assessment. The evidence Plaintiff has cited does not undermine the ALJ's evaluation.

### E.   THE VE'S TESTIMONY IS BASED ON A COMPLETE HYPOTHETICAL

Although not raised in her statement of errors, at the conclusion of her brief Plaintiff argues that the VE's testimony is unreliable because the ALJ's hypothetical question does not match the RFC assessment in this case. (Doc. 16). We are not persuaded. The ALJ's first hypothetical question mirrors the ALJ's RFC assessment. (Admin. Tr. 58; Doc. 8-2, p. 59). Furthermore, in response to that hypothetical question, the VE identified the same three occupations that were cited in the ALJ decision. (Admin. Tr. 59; Doc. 8-2, p. 60). Accordingly, we are not persuaded that remand is required.

## V.    CONCLUSION

Accordingly, Plaintiff's request for relief is DENIED as follows:

(1)    The final decision of the Commissioner is AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner.

(3)    Appropriate Orders will be issued.

Date: March 29, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge